**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

| | |
|---|---|
| JACQUELINE OLSON, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br>  vs.<br><br>IC SYSTEM, INC., and MASON COMPANIES, INC., D/B/A STONEBERRY,<br><br>      Defendants. | Case No.: 17-cv-1014<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Jacqueline Olson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff, debts allegedly incurred for personal, family or household purposes, namely purchases of home goods.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debt arose from consumer credit transactions – the use of a personal "store credit" account.

6. Defendant IC System, Inc. ("ICS") is a corporation with its principal place of business located at 444 Highway 96 East, P.O. Box 64444, St. Paul, MN 55164.

7. ICS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. ICS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. ICS is a debt collector as defined in 15 U.S.C. § 1692a.

9. Defendant Mason Companies, Inc. ("Stoneberry") is a Wisconsin corporation with its primary place of business at 1251 1st Avenue, Chippewa Falls, Wisconsin 54729.

10. Mason does business under the fictitious or trade name "Stoneberry."

11. Mason is a retailer of home goods, operating primarily over the internet and through catalog sales. Stoneberry is one of several brand names associated with Mason. Others include "Figi's," "K. Jordan" and "ShoeMall."

12. Stoneberry offers store credit to consumers. https://www.stoneberry.com/customer-service/faqs/detail/about-stoneberry-credit/_/A-1605.

13. On its face, Wis. Stat. § 427.103(3) applies both to creditors collecting on their own behalf and to creditors who hire other debt collectors to collect on the creditor's behalf.

14. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to

2

collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

15. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

16. Stoneberry is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself, both directly and indirectly through collection agencies.

17. Stoneberry is a "merchant" as defined in the WCA, as the alleged debt arises from use of Plaintiff's consumer credit account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

18. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

19. Stoneberry uses third party debt collection agencies, including ICS, to collect consumer debts. Stoneberry, directly or indirectly, is a debt collector under this arrangement. Wis. Stat. § 427.103(3).

20. A company meeting the definition of a "debt collector" (here, Stoneberry) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

3

# THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 ET SEQ.

21. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

22. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

23. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

4

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

24. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

25. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15,

2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

26. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

27. The FDCPA prohibits debt collectors from contacting third parties and disclosing the existence of a debt. 15 U.S.C. § 1692c(b) states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

28. 15 U.S.C. § 1692b allows a debt collector to communicate with third parties for the purpose of determining the consumer's location or employment. However, the debt collector must "not state that such consumer owes any debt." 15 U.S.C. § 1692b(2).

29. The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

6

30. 15 U.S.C. § 1692e(2)(a) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

31. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

32. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

33. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

34. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

35. 15 U.S.C. § 1692g(a) states:

> a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

7

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

## THE WISCONSIN CONSUMER ACT, CH. 421-427 WIS. STATS.

36. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

37. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

38. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

39. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

40. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

41. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides

8

injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

42. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

43. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

44. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

45. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## **FACTS**

46. Plaintiff entered into one or more consumer credit transactions with Stoneberry for the purchase of home goods.

47. All purchases were for personal use. Plaintiff did not buy anything from Stoneberry for resale or for any business purpose.

9

48. On or about July 13, 2016, Stoneberry mailed a debt collection letter to Plaintiff regarding her alleged Stoneberry Credit debt. A copy of the letter is attached to this complaint as Exhibit A.

49. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

50. Exhibit A states:

Account Balance: $577.91

Past Due Amount: $577.91

51. Exhibit A also states the following:

FINAL DEMAND NOTICE!!!

This notice is to inform you that your account is long past due. Our company has made considerable efforts to make arrangements regarding your account. However, you apparently felt it necessary to avoid making payments on your account.

You leave us no choice at this time, but to forward your account to a collection agency unless payment of $577.91 is received within ten days.

52. On or about July 21, 2016, ICS mailed a debt collection letter to Plaintiff regarding the same alleged Stoneberry Credit account as described in Exhibit A. A copy of the letter is attached to this complaint as Exhibit B.

53. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

54. Exhibit B was the first written communication that ICS sent to Plaintiff regarding Plaintiff's Stoneberry Credit account.

55. Exhibit B states:

10

| | |
|---|---|
| Principal Due: | $429.00 |
| Billing Fees Due: | $67.47 |
| Late Charge Due: | $90.00 |
| **BALANCE DUE:** | **$586.47** |

56. <u>Exhibits A and B</u> together are false, misleading and confusing to the unsophisticated consumer.

57. In <u>Exhibit A</u>, Stoneberry tells the consumer:

You leave us no choice at this time, but to forward your account to a collection agency unless payment of $577.91 is received within ten days.

58. In fact, Stoneberry engaged ICS to collect Plaintiff's debt before the ten day period had expired.

59. ICS mailed <u>Exhibit B</u> to Plaintiff before the ten day period had expired.

60. <u>Exhibit B</u> also attempts to collect a "Billing Fee" of $67.47.

61. $67.47 is approximately 15% of the "Principal Due" as listed on <u>Exhibit B</u>.

62. Upon information and belief, the "Billing Fee" is actually a collection fee.

63. Neither Stoneberry nor ICS could add any collection fees to Plaintiff's account.

64. Any purchases made with the Stoneberry Credit account were "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

65. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

66. Stoneberry Credit transactions are consumer credit transactions. Plaintiff purchased goods on credit, which was payable in installments and subject to finance charges.

11

67. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

68. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

69. Because Stoneberry Credit transactions are consumer credit transactions, Exhibit B falsely states or implies that ICS or Stoneberry has a right to add collection fees to the debt.

70. Even if a provision of any agreement between Plaintiff and the original creditor would purport to permit Stoneberry or ICS to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

71. Moreover, Exhibit A states that the "Account Balance" and "Past Due Amount" are both "$577.91," while Exhibit B, which ICS sent eight days later, states that the "Balance Due" is $586.47.

72. It is facially unclear why the balances on Exhibits A and B differ by $8.54. If the difference is attributable to interest, Stoneberry is charging approximately 68% annual interest.

12

73. Upon information and belief, the interest on the Stoneberry Credit account was actually 23.99% APR. The actual interest that would accrue during those eight days between Exhibits A and B was approximately $2.06.

74. Similarly, upon information and belief, the standard late fee for the Stoneberry Credit account is $15.00.

75. Plaintiff did not make a payment or any purchases that could account for the discrepancy.

76. Plaintiff was confused by the different amounts listed on Exhibits A and B, and had no idea what those charges are, potentially could be, or whether they are legitimate.

77. The unsophisticated consumer would be confused by the different balances on Exhibits A and B, or whether one or neither of the stated balances is correct.

78. Plaintiff was confused by Exhibits A and B.

79. Plaintiff had to spend time and money investigating Exhibits A and B and the consequences of any potential responses to Exhibits A and B.

80. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibits A and B.

## COUNT I -- FDCPA

81. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82. Count I is brought against Defendant ICS.

83. The balance on Stoneberry's bill (Exhibit A) was different from the balance on ICS's letter (Exhibit B), generated eight days later.

13

84. In Exhibit B, ICS attempted to collect an incorrect amount from Plaintiff.

85. Alternatively, regardless of whether the balance stated on Exhibit B is wrong, ICS's attempt to collect an amount different from the amount on Exhibit A is confusing to the unsophisticated consumer.

86. The different amounts are not attributable to interest accruing on the account or to late fees.

87. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), and 1692e(10).

## **COUNT II -- FDCPA**

88. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89. Count II is brought against Defendant ICS.

90. ICS failed to state the "amount of the debt" in a non-confusing manner.

91. The unsophisticated consumer would not understand why the balance on Exhibit B would differ from the balance on Exhibit A by an amount that is greater than the amount of interest accruing on the balance and less than the amount of a late fee.

92. Defendant violated 15 U.S.C. §§ 1692f, 1692f(1) and 1692g(a).

## **COUNT III -- FDCPA**

93. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

94. Count III is brought against Defendant ICS.

95. ICS's reference in Exhibit A to "Billing Fees Due" is false, misleading and confusing.

96. ICS attempted to add collection costs to Plaintiff's debts when neither ICS nor Stoneberry is entitled to collection costs. The WCA prohibits Defendants from adding collection costs to the debt.

97. ICS's misrepresentation of the amounts it would attempt to collect is an unfair and/or unconscionable method by which to try and collect an alleged debt.

98. As these statements are threatening and/or confusing to the unsophisticated consumer recipient so as to falsely imply that the creditor is entitled to receive a collection fee, they are an unfair and/or unconscionable method for attempting to collect a debt.

99. The unsophisticated consumer would be confused by the nebulous references in ICS's letter to "Billing Fees Due" and would have no idea what those charges are, potentially could be, or whether they would be legitimate.

100. ICS violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f and 1692f(1).

## COUNT IV -- WCA

101. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

102. Count IV is brought against Defendant Stoneberry.

103. Stoneberry misrepresented that Plaintiff had 10 days to pay before Stoneberry would refer the account to a debt collector. Exhibit A.

104. In fact, Stoneberry engaged ICS to collect Plaintiff's debt before the ten day period had expired.

105. ICS mailed Exhibit B to Plaintiff before the ten day period had expired.

106. Stoneberry violated Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L).

## CLASS ALLEGATIONS

107. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent collection letters in the form of <u>Exhibits A and B</u> to the complaint in this action, (c) which listed different balances on the same account, (d) seeking to collect an alleged debt, (e) incurred for personal, family or household purposes, (f) between July 21, 2016 and July 24, 2017, (g) that was not returned by the postal service.

108. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

109. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits A and B</u> violate the FDCPA.

110. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

111. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

112. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

113. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)    actual damages;

(b)  statutory damages;

(c)  attorneys' fees, litigation expenses and costs of suit; and

(d)  such other or further relief as the Court deems proper.

Dated:  July 21, 2017

**ADEMI & O'REILLY, LLP**

By:  s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com